## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| DFS GUAM L.P., | CIVIL CASE NO.: CV0307-16 |
| PLAINTIFF, | |
| vs. | DECISION AND ORDER |
| THE A.B. WON PAT INTERNATIONAL AIRPORT AUTHORITY, GUAM | |
| DEFENDANT. | |

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola on February 14, 2018, for a hearing on DFS Guam L.P.'s ("DFS") (1) Objection to GIAA's Second Report in Compliance with Open Government Law Pursuant to 5 GCA § 8115(f) and (2) Motion for Order to GIAA to Show Cause why it should not be held in contempt. Attorney Joyce Tang appeared on behalf of DFS. Attorney Genevieve Rapadas appeared on behalf of Defendant A.B. Won Pat International Airport Authority ("GIAA"). Upon review of the written and oral arguments and legal authorities, the Court hereby **GRANTS** DFS's Motion.

## BACKGROUND

This matter stems from several procurement protest cases involving DFS and GIAA.[1] During the course of litigation in the procurement cases, DFS submitted to GIAA several discovery requests

---

[1] The procurement protest cases are CV0943-14, CV0094-15, and CV0198-15.

CV0307-16, DFS v. GIAA
DECISION AND ORDER

Page 1 of 9

ORIGINAL

pursuant to the Sunshine Reform Act of 1999 ("Sunshine Act"). In response, GIAA served on DFS over 11,900 pages of documents.

On April 11, 2016, DFS initiated the instant case by filing a Complaint for Declaratory and Injunctive Relief under the Open Government Law ("OGL") and Sunshine Act. A First Amended Complaint was filed on June 9, 2016. DFS alleges the following:

> GIAA and the GIAA Board violated the OGL by failing to make and maintain, or failing to make and maintain in accordance with the requirements of law, minutes and verbatim recorded and written transcripts of certain of GIAA Board's executive and closed sessions and meetings during the period from July 11, 2012 through January 28, 2016. Alternatively, if such records exist, GIAA, the GIAA Board, and Ada violated the OGL and Sunshine Act by failing to make these documents publicly available, as required by law, and refusing to produce these documents in response to DFS's requests made on July 7, 2015, August 12, 2015, and March 8, 2016.

First Amended Compl. at 2 (June 9, 2016).

On June 26, 2017, the Court issued a Decision and Order on the parties' summary judgment motions. Dec. & Order (June 26, 2017). In that Decision and Order, the Court found that GIAA violated Section 8111 of the OGL by failing to disclose public documents in its response to DFS's Sunshine Request sent on July 7, 2015. Id. at 12. The documents referred to are specific transcripts of GIAA's executive sessions from 2012 to 2014. As a result, the Court found that DFS was "entitled to partial summary judgment on its Fifth and Ninth Causes of Action for Declaratory Relief, but *only* with respect to the Missing Session Transcripts for the Closed Executive Sessions held in 2012, 2013, and 2014." Id. (emphasis in original).

Pursuant to the OGL, the Court retains jurisdiction over the parties and subject matter of any OGL case for a period of one year from the date of final judgment. 5 GCA § 8115(f). The Court shall order the defendants to report in writing twice annually their compliance with the OGL. Id. Accordingly, on July 3, 2018, GIAA submitted its First Report of Compliance, in which it states that it is in compliance with 5 GCA § 8115(c)(7). First Report of Compliance (July 3, 2018).

On November 20, 2018, DFS served a request to GIAA's Executive Director requesting that GIAA provide DFS with, among other things, "[c]opies of all tapes and transcripts of the executive session meeting of the A.B. Won Pat International Airport Authority, Guam's Board of Directors held on April 26, 2018." Civille Decl., Exh. B (Dec. 14, 2018). On November 28, 2018, GIAA

responded in a letter to DFS refusing to produce the requested copies of "all tapes and transcripts" of the executive session for the following reasons: (1) "GIAA currently does not have in its possession the remaining document"; (2) the document is exempted from disclosure under 5 GCA § 10108(a); and (3) "GIAA intends to seek a court order to further seal the executive session transcript pursuant to 5 GCA § 8111 once GIAA is in receipt of the transcript." Id. Exh. C.

On December 4, 2018, GIAA filed its Second Report of Compliance, again stating that it is in compliance with 5 GCA § 8115(c)(7). Second Report of Compliance (Dec. 4, 2018). On December 14, 2018, DFS filed its Objection to GIAA's Second Report, arguing that GIAA is not in compliance with 5 GCA § 8115(f) and moving for an order to show cause why GIAA should not be held in contempt. Objection to Second Report (Dec. 14, 2018).

On January 28, 2019, the Honorable Michael J. Bordallo of the Superior Court of Guam issued a Decision and Order in SP0102-15 in which he sealed the April 26 Transcript pursuant to the OGL and GIAA's Ninth Supplemental Petition to Seal Executive Session Transcripts of the Board of Directors. Bordallo Dec. & Order at 5 (Jan. 28, 2019). Judge Bordallo ruled that the portions of the April 26 Transcript would be sealed subject to this Court's decision, and that if this Court decided to unseal those portions as a contempt sanction then his sealing order would be vacated. Id.

## DISCUSSION

5 GCA § 8115 of the OGL provides for Executive Sessions in which agency officials may hold closed sessions to discuss legal matters with an attorney. Such meetings shall be transcribed and the transcripts are to be sealed for a period of six months and then released to the public, unless further sealed by a judge. Id. Specifically, 5 GCA § 8115(c)(3) and (7) state the following:

> (3) A verbatim transcript by an authorized court reporter must be taken of all meetings which are closed to discuss litigation or possible litigation and such transcript shall promptly be reduced to writing.

> (7) The transcript of such meeting shall be sealed for a period of six (6) months, and shall thereafter be a public document unless there is a court order, further sealing the transcript . . .

DFS seeks the transcript of a meeting which took place on April 26, 2018 ("April 26 Transcript"). DFS argues that the court should compel GIAA to release the transcript as a contempt sanction for GIAA's alleged misrepresentation to the Court when it stated it was in compliance with the OGL. GIAA argues that it was in compliance with the OGL, so its statement was not a

misrepresentation. The parties disagree as to the interpretation of the OGL on two points: (1) The date when the six-month seal period begins and (2) the duties imposed on a government agency to ensure the meeting minutes are transcribed in a prompt manner.

The Court starts its examination using the Guam Supreme Court's well-established principles of statutory interpretation. When determining the meaning and applicability of statutes, the Court's primary duty is "to interpret statutes in the light of their terms and legislative intent." Carlson v. Guam, 2002 Guam 15 ¶ 46 n.7., see also Big Creek Lumber Co. v. Cnty. Of Santa Cruz, 136 P.3d 821, 829 (Cal. 2006). If a statute is unambiguous, then the judicial inquiry into the meaning of the statute is complete. People v. Quichocho, 1997 Guam 13 ¶ 5. In order to determine whether a statute is ambiguous, the Court must examine the language of the statute and the structure of the law as a whole including its object and policy. The inquiry into whether a statute is ambiguous begins with a look at the plain meaning of the language in question, and, when looking at the language, the Court must determine if the language is plain and unambiguous. Aguon v. Gutierrez, 2002 Guam 14 ¶ 6, see also Teleguam Holdings. LLC v, Territory of Guam, 2015 Guam 13 ¶ 18 ("Statutory interpretation always begins with the plain language of the statute."). The Court will hold to the plain meaning of the statutes in the absence of "clear legislative intent to the contrary."

To determine legislative intent, the Court must read a statute "as a whole" and "construe each section in conjunction with other sections." Sumitomo Constr. Co. v. Gov't of Guam, 2001 Guam 23 ¶ 17. However, "[n]otwithstanding the deference due the plain-meaning of statutory language such language need not be followed where the result would lead to absurd or impractical consequences, untenable distinctions, or unreasonable results." Id.

### 1. The six-month seal period begins on the date of the April 26 Session.

5 GCA § 8111(c)(7), the OGL section which discusses executive sessions, states the following: "The transcript of such meeting shall be sealed for a period of six (6) months, and shall thereafter be a public document unless there is a court order, further sealing the transcript . . ." DFS argues that the six-month period provided by Section 8115(c)(7) begins on the day of the meeting in question, and therefore began on April 26, 2018, and ended on October 26, 2018. Reply at 2 (Jan. 25, 2019). GIAA argues that the six-month period begins on the date the verbatim transcript of the meeting is reduced to writing. Opp'n at 4 (Jan. 11, 2019). The Court finds that the OGL is ambiguous as to when the six-month seal period begins, as the plain language of the statute could reasonably be interpreted to mean either six months after the meeting, or six months after the

transcript is produced. Because the statute is ambiguous, the Court must interpret the statute in the light of its terms and legislative intent. Carlson, 2002 Guam 15 ¶ 46 n.7.

DFS argues that the only reasonable construction of the OGL is that the six-month seal period must run from the meeting date, because that is the only date known to the public. Reply at 3. Under GIAA's interpretation, the public would never know when the six-month seal period began (or ended) because there is no way for any member of the public to ascertain when the transcript was actually produced or when the public agency obtained possession of it. This interpretation would create the perverse incentive for GIAA (and other public agencies) to delay receipt of Executive Session transcripts. This would allow a public agency to effectively toll the six-month seal period unless and until it obtains actual possession of the transcript. The Court finds that this is not what the Legislature intended.

The OGL was passed because the Legislature determined that meeting transcripts may contain information which would be relevant to the public. If such information is relevant to the public, it must be disclosed as soon as practically possible. The six-month seal period allows time for transcripts to be produced and, if appropriate, for an agency to apply for a further sealing order. GIAA's interpretation of the OGL allows for a transcript to be unproduced for an indefinite amount of time before the six-month seal period even begins. If the public is entitled to this information, it must be provided expeditiously, as its value to the public may diminish as time progresses. In the instant case, for example, GIAA's interpretation of the OGL would allow the April 26 Transcript to be sealed, without a sealing order, for a period of over one year after the date of the meeting. This result does not align with the OGL's underlying purpose of ensuring "that the formation of public policy and decisions is public and shall not be conducted in secret." 5 GCA § 8102.

The Court notes that GIAA has previously interpreted the OGL to mean that the six-month period begins on the day of the meeting. On December 20, 2018, GIAA represented to Judge Bordallo in a filing in SP0102-15 the following: "Under Section 8111(c) of the Open Government Law, the Transcripts are automatically sealed for six months *from the date of the respective meeting* to protect attorney client privileged communications between GIAA's board of directors and GIAA's attorneys." GIAA's Req. for Jud. Notice (Jan. 11, 2019), Ex. A (Ninth Supp. Pet., at p 1: 7-9) (emphasis added). Further, in seeking to seal the transcript from an executive session held on March 22, 2018, GIAA stated that "transcripts from such executive sessions are automatically sealed

for six (6) months *from the date of each respective meeting.*" Second Civille Decl., Exh. B (Jan. 25, 2019) (emphasis added).

The only interpretation of the OGL that fulfills the Legislature's intent is to find that the six-month seal period begins on the date of the respective meeting. GIAA notes that this interpretation of the OGL's six-month seal period means that the seal period ended before GIAA had possession of the transcript, and GIAA was therefore unable to petition the Court for a further sealing order pursuant to Section 8115(c)(7). As explained below, the GIAA bears the burden of ensuring that meeting transcripts are provided in a timely manner.

2. **GIAA must ensure the creation of transcripts of executive sessions.**

GIAA points out that the OGL does not direct GIAA itself to create the transcripts of executive sessions. Opp'n at 4. It is undisputed that GIAA complied with the OGL by ensuring that either an authorized court reporter or their employee was present at the April 26 Session and instructed to prepare a written transcript. It is also undisputed that this transcript was not created by the court reporter until roughly six months after the April 26 Session. The question is whether GIAA was unable to comply with the OGL due to GIAA's inability to compel production of meeting transcripts, and the effect this alleged inability would have on GIAA's representation in its Second Report of Compliance.

The OGL states that "[a] verbatim transcript by an authorized court reporter must be taken of all meetings which are closed to discuss litigation or possible litigation and such transcript shall promptly be reduced to writing." 5 GCA § 8111(c)(3). While the OGL states that the transcript must be taken by an authorized court reporter, it does not state what obligation an agency has to ensure such transcript is actually produced. Because the government agency is the only party who could be deemed responsible for ensuring that a court reporter attend all such meetings, the Court finds that the OGL implies that the agency must also bear the responsibility for ensuring that the court reporter subsequently reduces the transcript to writing.

Similar to the issue of when the six-month seal period begins, the Court finds that the OGL is ambiguous as to what an agency's obligations are to ensure that a transcript is promptly reduced to writing. The Court must therefore interpret the statute in the light of its terms and legislative intent. Carlson, 2002 Guam 15 ¶ 46 n.7.

GIAA points out that the language of the OGL prevents GIAA from creating its own transcripts of executive session meetings. Opp'n at 5. GIAA further states that it has no authority to

force the authorized court reporter to re-arrange his work load in order to meet the OGL's definition of "promptly." Opp'n at 4. Guam law creates the ministerial office of "Official Reporters for the Courts" and empowers only the Judicial Counsel to appoint and supervise them. See 7 GCA § 8102, 8103. GIAA is correct that it is not permitted to create its own transcripts. However, this does not mean that GIAA has no affirmative duty to ensure that such transcripts are produced by an authorized court reporter.

The underlying purpose of the OGL is to ensure "that the formation of public policy and decisions is public and shall not be conducted in secret." 5 GCA § 8102. To ensure that this goal is met, the Court finds that the only reasonable construction of the OGL is that an agency must be held responsible for ensuring that an authorized court reporter produces a verbatim transcript, and does so promptly. The absence of such obligation creates a lack of accountability which leads to results such as the one in this case, where an unreasonable delay in the production of a transcript has hindered the OGL's purpose of promoting government transparency. To the extent that an agency is unable to ensure such production due to a lack of cooperation from an authorized court reporter, the agency may not hold the meeting. While this result may appear overly harsh, the Court finds that such strict rule is necessary in order to enforce compliance with the OGL. Further, the Court finds it unlikely that a situation will arise where an agency is unable, despite its best efforts, to obtain a transcript from an authorized reporter and submit such transcript to a judge for a sealing order within six months of the meeting.

### 3. GIAA's statement that it was in compliance of the OGL was a material misrepresentation to the Court.

DFS seeks an order to show cause as to why GIAA should not be held in contempt for making a material misrepresentation to the Court regarding its compliance with the OGL. Mot. for Order to Show Cause at 3. Having determined that GIAA was not in compliance with the OGL when it claimed to be so in its Second Report of Compliance, the Court now must determine if GIAA's claim constitutes a material misrepresentation.

GIAA argues that its inability to create the transcript without the cooperation from an authorized court reporter render GIAA immune from a finding of contempt. Opp'n at 6. Where compliance with a court order is impossible due to a matter outside the subject party's control, "neither the moving party nor the court has any reason to proceed with the civil contempt action." United States v. Rylander, 460 U.S. 752, 757 (1983). As a preliminary matter, the Court notes that

GIAA had an affirmative duty to ensure production of the April 26 Transcript, and compliance of the OGL was not impossible. Further, the question before the Court in this contempt matter is not whether it was impossible for GIAA to comply with the OGL, but instead whether it was impossible for GIAA to inform the Court that it was not in compliance with the OGL.

Regardless of the underlying reasons for noncompliance, GIAA was capable of informing the Court that the April 26 Transcript had not been released over six months after the meeting, but instead chose to file a misleading compliance report. See People v. Tennessen, 2011 Guam 2, ¶ 30 n. 12 ("[I]n making these arguments Moylan walks on the razor's edge of a separate contempt proceeding for making what appear to be deliberately misleading arguments bordering on misrepresentation."); People v. Tennessen, 2010 Guam 12, ¶ 4 n.3 ("Artful advocacy should not border on misrepresentation, such actions are in themselves contemptuous.") GIAA's Second Report of Compliance does not mention the April 26 Transcript, but instead contains a brief statement that it is in compliance with the OGL. This lack of candor is concerning and suggests that GIAA was using the delay in transcription to its advantage in avoiding compliance with the OGL. The Court therefore finds that GIAA made a misrepresentation to the Court when it stated that it was in compliance with the OGL.

4. **The appropriate sanction for GIAA's conduct is the production of the April 26 Transcript.**

Having determined that GIAA made a material misrepresentation to the Court, the Court now must determine an appropriate sanction for such conduct. In addition to the material misrepresentation made by GIAA in its Second Report of Compliance, the factual record demonstrates that GIAA failed to make a good faith attempt to comply with the OGL in the first place. Because of its attempt to circumvent the OGL and further lack of candor, the Court finds that the appropriate sanction is the release of the April 26 Transcript.

The April 26 Session was recorded by George Castro ("Castro"), the authorized court reporter typically used by GIAA to transcribe its executive sessions. Rapadas Decl. at ¶ 2 (Jan. 11, 2019). Castro is one of only two private court reporters appointed by the Judicial Counsel of Guam. Opp'n at 1. On July 25, 2018, GIAA's counsel contacted George Castro to request the transcripts of each of the executive sessions held between March and June 2018, including the transcript for the April 26 Session. Peightal Decl. at ¶ 2. GIAA's counsel followed up with Castro on November 21, 2018, and again on November 26, 2018. Id. On November 26, 2018, Castro informed GIAA's

counsel that the transcripts were completed but that he was reviewing them one more time before he released them. Id. It is therefore undisputed that GIAA did not actually have possession of the transcript of the April 26 Session until over six months after the Session took place. However, the Court finds that GIAA is at fault for not acting more diligently in procuring the transcript.

A government agency that in good-faith wanted to comply with its obligations under the OGL would have informed the court reporter that it needed the April 26 Transcript as soon as possible. GIAA did not do so. A government agency acting in good faith would have repeatedly reminded the court reporter that the transcript was needed. The record reflects that GIAA contacted the reporter only one time in the nearly seven-month period between the April 26 Session and DFS's first request for the transcript of such meeting, sent on November 20, 2018.

The Court finds that GIAA's lack of due diligence and candor was a deliberate strategy to avoid compliance with the OGL. The Court will not allow GIAA to act in bad faith and yet achieve its goal of keeping the transcript sealed. To ensure future compliance with the OGL, the Court finds that the appropriate sanction for GIAA's conduct is the production of the April 26 Transcript.

## CONCLUSION

The Court hereby orders GIAA to appear and show cause why it should not be held in contempt.

This matter is set for an Order to Show Cause hearing on ___6/27/19___ at ___10:30 a.m.___

SO ORDERED ___5/14/19___.

The Honorable Anita A. Sukola
Judge, Superior Court of Guam

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of: ___Civille___
LFJ
Date: 5/14/19  Time: 1:50pm
Deputy Clerk, Superior Court of Guam

CV0307-16, DFS v. GIAA
DECISION AND ORDER.